IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and CATHERINE WENSKUS, not individually, but as Administrator of the Funds,<br><br>                Plaintiffs,<br>v.<br><br>POOL INSTALLERS, INC., an Illinois corporation,<br><br>                Defendant. | Case No. 19 C 270 |

## COMPLAINT

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (hereinafter collectively "Funds"), by their attorneys, Patrick T. Wallace, Amy Carollo, G. Ryan Liska, Katherine C. Mosenson, and Sara Shuman and for their Complaint against Defendant Pool Installers, Inc.:

### COUNT I

### (Failure to Timely Pay Employee Benefit Contributions)

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer Trusts established pursuant to Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds maintain their respective Plans, which are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and 37(A), pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Pool Installers, Inc. (hereinafter "Company") conducts business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Company have been parties to a collective bargaining agreement, which became effective May 3, 2017 ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Builders Association ("BAC"), Chicago Area Independent Construction Association ("CAICA"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Industry Advancement Fund ("IAF"), and the Laborers' District Council Labor Management Committee Cooperative ("LDCLMMC"), to act as an agent in the collection of contributions due to those funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages at twenty percent (20%) of the report amount plus interest.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. The Agreement obligates Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

11. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the months of October 2018 forward, but has:

(a) failed to submit reports and contributions to Plaintiff Laborers' Pension Fund for the period of October 2018 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of October 2018 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to submit reports and contributions owed to Plaintiff Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of October 2018 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

4

(d) failed to submit reports and contributions to Laborers' Training Fund for the period of October 2018 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e) failed to report and pay all contributions owed to one or more of the other affiliated funds identified above for the period of October 2018 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

12. The Company failed to timely submit and pay its May through September 2018 benefits reports; it owes $28,549.22 in liquidated damages on those reports.

13. Company's actions in failing to submit timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

14. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Pool Installers, Inc. as follows:

a. ordering Pool Installers, Inc. to submit benefits reports and contributions for the time period of October 2018 forward;

b. entering judgment in sum certain against Pool Installers, Inc. on the amounts due and owing pursuant to the amounts pleaded in the Complaint, the October 2018 forward reports, if any, including contributions, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs;

c. ordering Pool Installers, Inc. to submit its books and records for a fringe benefit and Union dues compliance audit for the period October 1, 2017 forward upon demand;

d. enter judgment in sum certain against Pool Installers, Inc. on amounts due and owing pursuant to the audit including interest, liquidated damages, audit cost and attorney fees and costs; and

e. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Reports and Pay Union Dues)

15. Plaintiffs re-allege paragraphs 1 through 14 of Count I as though fully set forth herein.

16. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

17. Dues reports and contributions are due by the 10th day following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

18. Notwithstanding the obligations imposed by the Agreement, Company has performed covered work during the months of November 2018 forward and has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of November 2018 forward, thereby depriving the Union of income and information.

19. The Company untimely submitted and paid its July and September dues reports; it owes $780.18 in liquidated damages.

20. Pursuant to the Agreement, Company is liable to the Funds for the unpaid union dues, as well as liquidated damages, interest, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Pool Installers, Inc.:

    a. ordering Pool Installers, Inc. to submit its November 2018 forward reports and dues;

    b. ordering Pool Installers, Inc. to submit its books and records to an audit upon demand;

    c. entering judgment in sum certain against Pool Installers, Inc. on the amounts due and owing, if any, as revealed by the reports to be submitted, including dues contributions, liquidated damages, accumulated liquidated damages, interest, audit costs, and attorneys' fees and costs; and

    d.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

January 14, 2019

Respectfully submitted,

LABORERS' PENSION FUND, et al.

By: /s/ Amy Carollo

Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

# CONSTRUCTION & GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Pool Installers** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association without written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement, and all extensions hereof, and it waives any right it may have to terminate this agreement based upon the number of persons employed.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders' Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $1.90 per hour effective June 1, 2013; $2.00 per hour effective June 1, 2014; $2.05 per hour effective June 1, 2015; and $2.10 per hour effective June 1, 2016, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2013, the minimum wage rate shall be $37.00 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2013 (unless dated differently below) through May 31, 2017, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: **05/03/2017**, 20**17**

ACCEPTED:
Laborers' Local Union No. **1**
By: *Frank Damato*

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
By: *[signature]*
James P. Connolly, Business Manager
By: *[signature]*
Charles LoVerde, Secretary-Treasurer

For Office Use Only: **CA#CA#**

**Pool Installers** (Employer)
FEIN No.: [redacted]
By: **Ryan Wrihofen  President** (Print Name and Title)
*[signature]* (Signature)
**626 Wheeling Rd** (Address)
**Wheeling  IL, 60090** (City, State and Zip Code)
**847 537-3903** (Telephone/Telefax)
**todd@pooltechnologies.com** (Email Address)

RECEIVED MAY 11 2017

**EXHIBIT A**

Effective June 1, 2013    WHITE - LOCAL UNION  •  CANARY - TRUST FUND  •  PINK - DISTRICT COUNCIL  •  GOLD - EMPLOYER